Matthew S. Wolf, Esquire
Melissa Schroeder, Esquire
Matthew S. Wolf, Esquire, LLC
1236 Brace Road, Unit B
Cherry Hill, NJ 08034
Tel:    (856) 872-2929
Fax:    (856) 872-2928
mwolf@matthewswolf.com
melissa@matthewswolf.com
Counsel for Plaintiff Lindsey Allen

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

|  |  |  |
|---|---|---|
|  | : | CIVIL ACTION |
| LINDSEY ALLEN | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : | COMPLAINT |
| WHITEBRIDGE CONDOMINIUM ASSOC., | : |  |
| INC., GLORIA DAMIANI, and KA DIEHL & | : | (JURY TRIAL DEMANDED) |
| ASSOCIATES, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

_____

Plaintiff, Lindsey Allen, brings this action against the defendants Whitebridge

Condominium Assoc., Inc., Gloria Damiani, and KA Diehl & Associates by and through the

undersigned counsel alleging and averring as follows:

**Nature of the Action**

1.     This action is brought pursuant to the Fair Housing Act, 42 U.S.C. 3601, et. seq. ("the

       FHA"), and pendent state law claims under the Law Against Discrimination, N.J.S.A.

       10:5-1 et seq. ("the NJLAD").  The essential nature of this case is that Plaintiff Lindsey

       Allen has been harassed, intimidated and bullied upon moving into an affordable housing

       condominium unit that she purchased to occupy as a single mother of two mixed-race

young boys and she has been specifically told by the condominium association president that children are not welcome in the association.  From the moment Plaintiff moved in, Ms. Damiani, the Association, and the association's management company, have succeeded in making Plaintiff's life a living nightmare, including causing Plaintiff's children to essentially be strip searched by the government on a false complaint of child abuse made by the Board President.  This matter seeks both legal and equitable relief.

## Jurisdiction and Venue

2.     Jurisdiction is proper in this Court based on a federal question, as the claim, in part, arises out of the FHA.  Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  The events or omissions giving rise to the claim occurred in this judicial district.  The property that is the subject of the action is situated within this judicial district.

4.     The Court has supplemental jurisdiction over the claims under the NJLAD based on 28 U.S.C.A. § 1367.

## Parties

5.     Plaintiff Lindsey Allen, residing at 1207 Squirrel Road, Marlton, New Jersey 08053 is a Caucasian female whose natural born young sons, ages 10 and 7, are of mixed race, their father and Plaintiff's ex-husband being African American.

6.     Plaintiff Allen is single, having divorced the father of her children.

7.     Plaintiff Allen is a single working mother, gainfully employed, however, of such limited means that she has qualified for affordable housing.  Plaintiff's residence, 1207 Squirrel

Road, is a deed restricted affordable housing unit, as that term is used in the Evesham

Municipal Code, New Jersey Regulations, and New Jersey Statutes.

8.      Defendant Whitebridge Condominium Assoc., Inc., is a New Jersey not-for-profit

corporation, formed to administer the common elements and operate the common affairs

of the Unit owners of the Whitebridge Condominiums and to maintain, repair and replace

the General and Limited Common Elements of the Condominium as provided in the

Master Deed and the By-Laws of the Whitebridge Condominiums in Marlton, New

Jersey.  Said defendant may be referred to as "the Association."

9.      Defendant Gloria Damiani is a resident and owner at Whitebridge Condominiums, and is

the President of defendant Whitebridge Condominium Assoc., Inc., residing at 105 Quail

Road, Marlton, NJ 08053.

10.     Defendant KA Diehl & Associates, is the property management company currently

responsible for managing the Whitebridge Condominiums, with offices at 125 Sixth

Avenue, Suite 201, Mt. Laurel, NJ 08054.

**Background**

11.     Plaintiff Allen purchased 1207 Squirrel Road, Marlton, NJ 08053, and on March 20,

2014, moved into the unit (said unit referred to hereinafter as "the unit").

12.     The unit is a deed restricted affordable housing unit.

13.     At the time of the closing, defendant KA Diehl & Associates ("KA Diehl") prepared a

closing/resale report which was supposed to be used to facilitate the closing of the sale of

the unit.  A copy of the report is attached as **Exhibit A**.  Nothing in the report disclosed

anything about an obligation to pay for pool passes.

14.     Upon moving in the unit, on March 20, 2014, while having a trailer close the door of the
        unit, Gloria Damiani approached the Plaintiff and introduced herself as **"the**
        **Whitebridge Nazi**" and immediately demanded that the Plaintiff move the trailer off the
        grass, threatening to issue fines against the Plaintiff.

15.     Ms. Damiani - who is apparently unemployed and around the development at all hours of
        the day - has video cameras that she uses to monitor the comings and goings of the
        residents of the condominium property.  This is how she can see far and wide throughout
        the development.  She has been using the video cameras to target Plaintiff and to
        discriminate against the Plaintiff.  The Association and KA Diehl is aware of this and has
        condoned this.

16.     The next day, on March 21, 2014, while Plaintiff was going to meet her children from the
        school bus stop, Gloria Damiani once again approached the Plaintiff.  Ms. Damiani
        accused the Plaintiff, who does not smoke, of dropping cigarette butts.

17.     At that time, Ms. Damiani told the Plaintiff words to the effect: **"If I could have it my**
        **way, there would no children in this community**."

18.     On March 28, 2014, Ms. Damiani approached the Plaintiff again and told her that bikes,
        pogo sticks, and basketballs are not allowed to be on sidewalks as per the bylaws and that
        the pogo sticks and basketballs make a lot of noise. Ms. Damiani said words to the effect:
        "Basketballs should be on the basketball court where they belong only."

19.     On April 2, 2014, there was fishing pole that the Plaintiff's children had temporarily left
        leaning against the exterior wall of the unit.  Once again, Ms. Damiani appeared and
        castigated the Plaintiff saying that nothing could be left outside.

20.     Other unit owners, who are not single parents of mixed race children living in affordable
        housing, have different items that are left outside but have not been castigated by Ms.
        Damiani.

21.     On April 23, 2014, Ms. Damiani approached the Plaintiff around the time that one of
        Plaintiff's sons was bouncing a basketball and Ms. Damiani told Plaintiff that bouncing
        balls is prohibited.

22.     On May 5, 2014, Plaintiff received the violation, a copy of which is attached as **Exhibit
        B**.  There was no basis to issue this notice of violation.

23.     On Saturday, May 10, 2014, the night before Mother's day, as Plaintiff was working a 12
        hour shift at her hospital job, Plaintiff's children spread flower petals on the sidewalk
        path leading up to her unit door, so that when Plaintiff returned from her long shift she
        should have been pleasantly surprised by the beautiful welcome home, celebrating
        mother's day.

24.     Instead, upon arriving home around 7:15 a.m., Plaintiff was fearful and afraid upon
        seeing the flower petals, on account of her interactions with Ms. Damiani, she fully
        expected to be castigated once again.   Plaintiff immediately went into the house and got a
        broom and dustpan and began to clean up the flower petals.  Sure enough, at around 7:45
        a.m., Defendant Damiani appeared and castigated the Plaintiff once again for the "litter"
        on the sidewalk and threatened to fine the Plaintiff.

25.     On Saturday, May 17, 2014, early in the morning, Plaintiff was in her unit with her
        children and she looked out her window.  Five feet away from the window, Defendant
        Damiani was standing there looking in the window like a "Peeping Tom.".

26.    Shortly thereafter, Ms. Damiani, in an effort to harass, intimidate and bully the Plaintiff

       and her children, as she had done from the moment that Plaintiff and her children moved

       into the unit, contacted the New Jersey Division of Youth and Family Services, which

       resulted in social workers from NJDFYS coming to the unit about 7 hours after Ms.

       Damiani was spying through the window.

27.    The social workers came into the unit and separated the Plaintiff and her children and the

       Plaintiff was able to gather from her children about the questions that were asked of them,

       that the social workers were concerned about whether the children had ever been left

       home alone.  The children have not been left home alone and there was no basis for Ms.

       Damiani to report this as such.

28.    During the process of interviewing the 10 and 7 year old sons of the Plaintiff, one of the

       NJDYFS social required the boys to disrobe to examine them for physical abuse, of

       which there was none.

29.    Ms. Damiani did not contact NJDYFS out of a concern for Plaintiff's children, but rather

       in an effort to harass, intimidate, threaten and bully Plaintiff, on account of her being a

       single parent of mixed race children living in affordable housing.

30.    Plaintiff was so humiliated, embarrassed and bullied by Ms. Damiani and the

       Whitebridge Condominium Assoc., Inc., that she reported Ms. Damiani for harassment to

       the local police.  During the process, the police indicated that they were well aware of

       Ms. Damiani and that there had been other complaints against her.

31.    On May 20, 2014, Plaintiff was told by KA Diehl that she would receive her pool passes

       for the community pool.

32.    By notice dated May 20, 2014, Plaintiff was informed that she was fined for the window

       issue.  (**Exhibit C**).

33.    Plaintiff subsequently inquired on several occasions regarding pool passes as she was

       aware that neighbors had already received theirs.

34.    On May 27, 2014, KA Diehl indicated that Plaintiff had to pay a late fee in order to obtain

       pool passes even though Plaintiff moved into the unit after the deadline to apply for pool

       passes.  Significantly, the issue of the timing of the pool passes and the late fee were not

       disclosed on **Exhibit A** by KA Diehl and the issue of the late fee is but one of many

       issues being used to harass, intimidate, threaten and bully Plaintiff on prohibited bases.

35.    Plaintiff and KA Diehl engaged in the email correspondence regarding the pool passes, as

       shown in **Exhibit D**, including the inquiry:

       "My apologies at all of the queries being sent to you, but I am simply relaying
       what is asked. The board asks whether "both kids live there and what are their
       names?" Or, "if one or both kids are his and do not live here then [we can] just
       [make] one pass for her and 3 guest passes. Sorry but we need to know."

36.    On May 28, 2014, Plaintiff informed KA Diehl that the window was not defective and

       that it had been repaired as part of the closing, to which KA Diehl responded that **Exhibit**

       **C**, which is a notice of violation imposing a fine, was not what it clearly indicates itself to

       be, providing an email to Plaintiff stating: "You have not been fined this was a violation

       warning letter due to the fact you had a phone book holding up the window.  If you have

       resolved the issue with the window the violation will be closed."

37.    On May 29, 2014, through counsel, Plaintiff requested a hearing as per **Exhibit C**.

38.    KA Diehl responded by email dated May 30, (**Exhibit E**) which contains many false

      statements, mainly falsely accusing Plaintiff of being "mean and nasty."

39.    On May 30, 2014, Plaintiff received yet another notice of violation, seeking to fine

      Plaintiff for not providing the association a copy of her unit's insurance declarations page,

      notice of which was never provided to Plaintiff and no inquiry was ever made prior to

      issuing a notice of violation.  (**Exhibit F**).  Upon receipt of same, Plaintiff provided a

      copy of her insurance declarations information.

40.    Defendants are treating Plaintiff worse than other residents, in terms of enforcement of

      the associations rules, regulations, by-laws and other governing documents, on account of

      the intentional discrimination described herein.

41.    At this point in time, Plaintiff is terrified living in her own home, as Ms. Damiani

42.    Defendant KA Diehl is well aware of the Association and Ms. Damiani's ill intent to

      discriminate and it has aided and abetted in the discrimination and taken part actively in

      the discrimination.

43.    None of the actions taken to enforce the rules and regulations of the Association were

      taken for legitimate reasons; rather, they were taken for discriminatory reasons against the

      Plaintiff on the prohibited bases set forth below.

44.    Defendant Damiani, acting on behalf of the Association, has assumed the powers of

      enforcement of the rules and regulations of the Association and has abused her powers, in

      an extreme manner so as to target the Plaintiff.

45.     Plaintiff lives in daily fear if her children were to go outside of the unit to play out of fear

of a confrontation with Ms. Damiani and a fine from the Association and management

company.

46.     The Defendants have been intentionally discriminating against the Plaintiff on the

prohibited statutory bases set forth below, and such discrimination is abhorrent, willful,

wanton, reckless and must be punished to deter them and others from engaging in such

conduct.

## COUNT I
## Fair Housing Act

47.     Plaintiff incorporates by reference the preceding paragraphs as though they were set forth

herein at length.

48.     Defendants Whitebridge Condominium Assoc., Inc., Gloria Damiani and KA Diehl &

Associates, have intentionally discriminated against the Plaintiff on account of her

familial status and on the basis of the race and color of her children, which is prohibited

under the FHA, 42 U.S.C. § 3604(a).

49.     This is demonstrated by the actions and statements set forth above, and by other actions

and statements.

50.     As a result of this intentional discrimination, Plaintiff has suffered damages, including

severe and extreme emotional distress, anxiety, depression and a reduction in property

value.

## COUNT II
### Fair Housing Act

51.    Plaintiff incorporate by reference the preceding paragraphs as though they were set forth

       herein at length.

52.    The actions of the defendants are having a disproportionate impact upon the Plaintiff in

       violation of the FHA, 42 U.S.C. § 3604(a).

## COUNT III
### NJLAD

53.    Plaintiff incorporates by reference the preceding paragraphs as though they were set forth

       herein at length.

54.    The NJLAD, N.J.S.A. 10:5-2(h)(2) in particular, prohibits any person from discriminating

       in terms of housing or in the furnishing of facilities or services in connection therewith on

       the basis of race, color, marital status, familial status, or source of lawful income used for

       mortgage payments.

55.    Defendants' conduct, described above, violates N.J.S.A. 10:5-2(h)(2), because they are

       intentionally discriminating against the Plaintiff on the aforementioned prohibited bases.

56.    As a direct and proximate result, Plaintiff has been damaged by the discrimination, ,

       including severe and extreme emotional distress, anxiety, depression and a reduction in

       property value.

57.    In the alternative, even if the Defendants do not have discriminatory intent, their conduct

       has had a discriminatory impact.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff Lindsey Allen seeks Judgment against defendants Whitebridge

Condominium Assoc., Inc., Gloria Damiani, and KA Diehl & Associates, for:

a.      Compensatory damages;

b.      Punitive damages;

c.      Counsel fees and Costs as permitted under the FHA and the NJLAD;

d.      Interest both prejudgment and post-judgment;

e.      A declaration that the actions of the Defendants were and are in violation of the

        FHA and the NJLAD;

f.      Temporary, Preliminary and Permanent equitable relief in the form of restraints,

        restraining Defendants from violating the FHA and the NJLAD in the future; and,

g.      Granting such other relief as the court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all claims to triable.

                        Respectfully,


                        s/ Matthew S. Wolf
                        Matthew S. Wolf, Esquire


                        s/ Melissa Schroeder
                        Melissa Schroeder, Esquire